UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

JACKSON GAMBOA, *et al.*,

                                   Plaintiffs,

       v.

REGENERON PHARMACEUTICALS,
INC.,

                                   Defendant.

No. 22-CV-10605 (KMK)

OPINION & ORDER

---

Appearances:

David Donald Barnhorn, Esq.
Peter Arcadio Romero, Esq.
Law Office of Peter A. Romero PLLC
Hauppauge NY
*Counsel for Plaintiffs*

Craig Robert Benson, Esq.
James Fredrick Bryton, Esq.
Johane Severin, Esq.
Littler Mendelson, P.C.
New York, NY
*Counsel for Defendant*

KENNETH M. KARAS, United States District Judge:

        Plaintiffs Jackson Gamboa ("Gamboa") and Pedro Rocha ("Rocha") (collectively,

"Plaintiffs") bring this Class Action against Defendant Regeneron Pharmaceuticals, Inc.

("Defendant"), on behalf of themselves and similarly situated current and former employees of

Defendant, for a violation of New York Labor Law ("NYLL") § 191.  (*See generally* Am.

Compl. ("AC") (Dkt. No. 17).)  Plaintiffs alleges that Defendant failed to pay Plaintiffs and

Class Members, who are manual workers, on a weekly basis and instead paid Plaintiffs and Class

Members on a bi-weekly or semi-monthly basis in violation of NYLL § 191.  Before the Court is

Defendant's Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) (the "Motion"). (Not. of Mot. (Dkt. No. 25)). For the following reasons, Defendant's Motion is denied.

## I.  Background

### A.  Factual Background

The following facts are drawn from the AC, which is assumed to be true for the purpose of resolving the instant Motion. *See Div. 1181 Amalgamated Transit Union-N.Y. Emps. Pension Fund v. N.Y.C. Dep't of Educ.*, 9 F.4th 91, 94 (2d Cir. 2021) (per curiam).

Gamboa has been employed by Defendant as an animal care technician at its facility in Tarrytown, New York since approximately 2016. (AC ¶ 24.) Rocha has been employed by Defendant as an animal care technician at its facility in Tarrytown, New York since approximately 2017. (*Id.* ¶ 25.) Plaintiffs and other animal care technicians are responsible for the care and maintenance of animals, including but not limited to, feeding the animals; watering the animals; changing the cages in which the animals are kept; cleaning the animal cages and water bottles; unpacking and housing animals upon arrival; janitorial maintenance of facility rooms and stocking of supplies; and the preventative maintenance of animal facility equipment and supplies. (*Id.* ¶ 26.) Plaintiffs allege that they and other animal care technicians are "manual workers" within the meaning of NYLL § 190(4). (*Id.* ¶ 35.)

Under NYLL § 191, Defendant is required to pay Plaintiffs and putative Class Members on a weekly basis, and no later than seven days after the end of the workweek in which the wages were earned. (*Id.* ¶¶ 37, 46.) However, Plaintiffs claim that Defendant failed to do so, and instead, Defendant paid Plaintiffs and similarly situated persons, who have worked as animal care technicians and aquatic animal care technicians, on a biweekly basis pursuant to its payroll

policy.  (*Id.* ¶ 37, 47.)  Plaintiffs aver that every time that Defendant failed to pay Plaintiffs and putative Class Members their wages earned within seven days of the end of the workweek, Defendant deprived them of the use of money to which they were legally entitled.  (*Id.* ¶¶ 38, 48.)  As a result, Plaintiffs and Class Members lost the time value of money.  (*Id.* ¶¶ 39, 48.)  Plaintiffs claim that they and Class Members are entitled to damages equal to the total of the delayed wages and reasonable attorney's fees and costs.  (*Id.* ¶ 49.)

    B.  Procedural History

Plaintiffs filed their initial Complaint on December 15, 2022, (*see* Compl. (Dkt. No. 1)), followed by an AC on March 15, 2023, (*see* AC).  On March 29, 2023, Defendant filed a pre-motion letter, (*see* Dkt. No. 20), and Plaintiffs filed a response on April 4, 2023, (*see* Dkt. No. 21.)  The Parties indicated in their respective letters that they met, conferred regarding Defendant's proposed Motion, and intended to waive the pre-motion conference.  (*See* Dkt. Nos. 20–21.)  In addition, the Parties provided in their letters a proposed briefing schedule for the Motion, (*see id.*), which the Court endorsed on April 5, 2023, (*see* Dkt. No. 23).

On May 15, 2023, Defendant filed the instant Motion.  (*See* Not. of Mot.; Mem. of Law in Supp. of Def.'s Mot. to Dismiss ("Def.'s Mem.") (Dkt. No. 26); Decl. of Craig R. Benson in Supp. of Def.'s Mot. to Dismiss ("Benson Decl.") (Dkt. No. 27).)  On July 12, 2023, following two extensions of time to file to which Defendant consented, Plaintiffs filed their opposition.  (*See* Mem. of Law in Opp. to Def.'s Mot. to Dismiss ("Pls.' Opp.") (Dkt. No. 32).)  On August 7, 2023, after a request for an extension of time to file, Defendant filed its Reply.  (*See* Reply Mem. of Law in Supp. of Def.'s Mot. to Dismiss ("Def.'s Reply Mem.") (Dkt. No. 37).)  Thereafter, on three separate occasions, Plaintiffs filed supplemental authorities in further opposition to Defendant's Motion.  (*See* Pls.' Not. of Supp. Auth. ("Pls.' SA 1") (Dkt. No. 38); Pls.' Not. of Supp. Auth. ("Pls.' SA 2") (Dkt. No. 39); Pls.' Not. of Supp. Auth. ("Pls.' SA 3")

(Dkt. No. 40).)  On February 7, 2024, Defendant also filed supplemental authority in support of its Motion.  (*See* Def.'s Not. of Supp. Auth. ("Def.'s SA") (Dkt. No. 41).)  Plaintiffs filed a letter on February 14, 2024, responding to Defendant's submission and providing additional supplemental authority.  (*See* Pls.' Not. of Supp. Auth. ("Pls.' SA 4") (Dkt. No. 42).)

## II.  Discussion

### A.  Standard of Review

The Supreme Court has held that while a complaint "does not need detailed factual allegations" to survive a motion to dismiss, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (alteration adopted) (internal quotation marks and citation omitted).  Indeed, Rule 8 of the Federal Rules of Civil Procedure "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  "Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." *Id.* (alteration adopted) (internal quotation marks and citation omitted).  Rather, a complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

"[O]nce a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint," *id.* at 563, and a plaintiff must allege "only enough facts to state a claim to relief that is plausible on its face," *id.* at 570.  However, if a plaintiff has not "nudged [his] claim[] across the line from conceivable to plausible, the[] complaint must be dismissed." *Id.*; *see also Iqbal*, 556 U.S. at 679 ("Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the

reviewing court to draw on its judicial experience and common sense.  But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'shown'—'that the pleader is entitled to relief.'" (alteration adopted) (internal quotation marks and citation omitted) (quoting Fed. R. Civ. P. 8(a)(2))); *id.* at 678–79 ("Rule 8 marks a notable and generous departure from the hypertechnical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions.").

"[W]hen ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint," *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam), and "draw[] all reasonable inferences in favor of the plaintiff," *Daniel v. T&M Prot. Res., Inc.*, 992 F. Supp. 2d 302, 304 n.1 (S.D.N.Y. 2014) (citing *Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012)).  Additionally, "[i]n adjudicating a Rule 12(b)(6) motion, a district court must confine its consideration to facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken."  *Leonard F. v. Isr. Disc. Bank of N.Y.*, 199 F.3d 99, 107 (2d Cir. 1999) (internal quotation marks and citation omitted); *see also Wang v. Palmisano*, 157 F. Supp. 3d 306, 317 (S.D.N.Y. 2016) (same).

B.  Analysis

Plaintiffs bring a claim against Defendant for violations of NYLL § 191, specifically alleging that Defendant improperly paid Plaintiffs—hourly-paid manual workers—on a bi-weekly basis, rather than on a weekly basis, in violation of Section 191.  (*See generally* AC.)[1]

---

[1] Although it does not move to dismiss on this basis, Defendant disputes that Plaintiffs are "manual workers" withing the meaning of NYLL § 191.  (*See* Def.'s Mem. 1 n.1.)

Defendant moves to dismiss Plaintiffs' AC for failure to state a claim, arguing that Section 191 does not provide Plaintiffs with an express or implied private right of action.  (*See* Def.'s Mem. 2–16.)[2]  For the following reasons, the Court disagrees with Defendant.

As a general matter, "[w]hen deciding a question of state law," federal courts "look to the state's decisional law, as well as to its constitution and statutes."  *Chen v. Dunkin' Brands, Inc.*, 954 F.3d 492, 497 (2d Cir. 2020) (internal quotation marks and citation omitted).  Absent a clear directive from a state's highest court, a federal court must "predict how the state's highest court would resolve the uncertainty or ambiguity."  *Id.* at 499 (internal quotation marks and citation omitted).  In doing so, the federal court "is bound to apply the law as interpreted by a state's intermediate appellate courts unless there is persuasive evidence that the state's highest court would reach a different conclusion."  *V.S. v. Muhammad*, 595 F.3d 426, 432 (2d Cir. 2010).

Section 191(1)(a) states in relevant part that "[a] manual worker shall be paid weekly and not later than seven calendar days after the end of the week in which the wages are earned" unless an employer is authorized to do otherwise by the State.  NYLL § 191(1)(a)(i).  Section 198 provides in relevant part:

> In any action instituted in the courts upon a wage claim by an employee or the commissioner in which the employee prevails, the court shall allow such employee to recover the full amount of any underpayment, all reasonable attorney's fees, prejudgment interest as required under the civil practice law and rules, and, unless the employer proves a good faith basis to believe that its underpayment of wages

---

Defendant contends that "[b]ecause this issue," whether Plaintiffs are manual workers, "requires a fact-based analysis, it is appropriately reserved for later proceedings (should they prove necessary in this case)."  (*Id.*)

[2] In the alternative, Defendant requested that the Court stay this Action pending a decision from the Second Department, which was supposed to address the exact matters at issue in this case.  (*See* Def.'s Mem. 16–17.)  However, that decision was issued on January 17, 2024. *See Grant v. Glob. Aircraft Dispatch, Inc.*, No. 2021-3202, 2024 WL 172900 (App. Div. Jan. 17, 2024).  Accordingly, Defendant's request for a stay is denied as moot.

was in compliance with the law, an additional amount as liquidated damages equal
to one hundred percent of the total amount of the wages found to be due.

*Id.* § 198(1-a).

In *Vega v. CM & Associates Construction Management, LLC*, the First Department held
that Section 191 together with Section 198, provide workers with a private right of action for
untimely payment of wages.  107 N.Y.S.3d 286, 288 (App. Div. 2019).  Specifically, the *Vega*
Court held that "the plain language of [Section 198] indicates that individuals may bring suit for
any 'wage claim' against an employer," and that "[t]he remedies provided by [S]ection 198(1-a)
apply to 'violations of [A]rticle 6' [of New York Labor Law], and [that] [S]ection 191(1)(a) is a
part of [A]rticle 6."  *Id.* at 287–88 (internal citations omitted).  Moreover, the court held that
"even if [Section] 198 does not expressly authorize a private action for violation of the
requirements of [Section 191], a remedy may be implied since plaintiff is one of the class for
whose particular benefit the statute was enacted, the recognition of a private right of action
would promote the legislative purpose of the statute and the creation of such a right would be
consistent with the legislative scheme."  *Id.* at 288–89 (citations omitted).

Since *Vega*, every New York court in the Second Circuit has adopted its holding.  *See,
e.g.*, *Zachary v. BG Retail, LLC*, No. 22-CV-10521, 2024 WL 554174, at *7–9 (S.D.N.Y. Feb.
12, 2024); *Beh v. Cmty. Care Companions Inc.*, No. 19-CV-1417, 2024 WL 264448, at *5
(W.D.N.Y. Jan. 24, 2024); *Gutierrez v. Carter's Inc.*, No. 22-CV-3234, 2023 WL 7337184, at *3
(E.D.N.Y. Nov. 7, 2023); *Shugars v. Masonite Corp.*, No. 22-CV-1237, 2023 WL 7280902, at
*6–7 (N.D.N.Y. Nov. 3, 2023) (collecting cases).

Nevertheless, Defendant argues that this Court should not follow *Vega* because it was
wrongly decided, (*see* Def.'s Mem. 1, 4), and should instead adopt the Second Department's
recent holding in *Grant v. Global Aircraft Dispatch, Inc.*, (*see* Def.'s SA), which contrary to

7

*Vega* and its progeny, held that plaintiff employees do not have an express or implied private right of action to recover damages for a defendant employer's alleged violation of Section 191(1)(a), 2024 WL 172900, at *2–5.

In *Grant*, the Court reasoned that the neither the language nor the legislative history of Section 198 supported the plaintiff employee's contention that this statute expressly provides a private right of action to recover for a violation of Section 191(1)(a), where the employer pays wages pursuant to a regular biweekly pay schedule. *Grant*, 2024 WL 172900, at *3–5. Specifically, the court determined that a late payment was not an "underpayment" within the meaning of Section 198, because an employee who receives a late payment has not "received a lesser amount of earnings than agreed upon." *Id.* at *3. Moreover, the court held that "under the statute as written, the recovery of liquidated damages is dependent upon the recovery of an underpayment. Thus, absent an underpayment or nonpayment, liquidated damages are not available." *Id.* In addition, the court concluded that the legislative history showed that Section 198(1-a) "was aimed at remedying employers' failure to pay the amount of wages required by contract or law." *Id.* at *5. The court noted that "[t]here is no reference in the legislative history of [Section] 198 to the frequency or timing of wage payments, and nothing to suggest that the statute was meant to address circumstances in which an employer pays full wages pursuant to an agreed-upon, biweekly pay schedule that nevertheless does not conform to the frequency of payments provision of law." *Id.* Furthermore, the Second Department reasoned that the existence of "multiple official enforcement mechanisms for violations of [Section] 191" meant no private right to sue for violations of the statute could be implied. *Id.*

As the New York Court of Appeals has still not opined on this issue, this Court's task is to "predict how the [Court of Appeals] would resolve the uncertainty or ambiguity" from the

conflicting appellate decisions.  *Chen*, 954 F.3d 492 at 499 (internal quotation marks and citation omitted).  Another court in this District recently evaluated the exact same issue and concluded "that the [New York State] Court of Appeals would likely agree with *Vega* and reject *Grant*." *Zachary*, 2024 WL 554174, at *7.  This Court agrees with *Zachary*'s analysis.

With respect to an express private right of action, in *Zachary*, the court held that "[a]lthough Section 198 does not explicitly reference late wage payments, its text authorizes employees to bring 'wage claims' for 'underpayments' violative of [A]rticle 6 of the NYLL, and [A]rticle 6 includes the pay frequency requirements in Section 191.  Therefore, the absence of language in Section 198 addressing late payments is irrelevant." *Id.* at *7 (alteration adopted). Further, the court determined that "the plain language of Section 191 discredits the *Grant* court's view that Section 198's enforcement mechanism is not triggered when an employer and manual worker agree to a biweekly payment schedule," given that "NYLL Section 191(2) provides that 'no employee shall be required as a condition of employment to accept wages at periods other than as provided in this section.'" *Id.* at *8 (alteration adopted).  Moreover, the *Zachary* court noted that the legislative history does in fact support a private right of action.  *See id.* Specifically, "[a]s the *Grant* majority acknowledges, money has a real time value, and the 2010 amendments to Section 198 were intended to allow employees 'to recover the full amount of any underpayment.'" *Id.* (quoting *Grant*, 2024 WL 172900, at *5).  "In addition, the stated legislative purposes of the 2010 amendments—i.e., to enhance penalties for wage theft and benefit low-wage workers struggling to support their families—are unquestionably better served by a private right to enforce Section 191 than by requiring injured employees to submit administrative complaints and hope for an official enforcement action." *Id.* (italics omitted).

As for an implied right of action, both *Zachary* and various other district courts in the Second Circuit have rejected *Grant*'s approach. *See id.* *Zachary* held that *Grant*'s reliance on *Konkur v. Utica Academy of Science Charter School*, 185 N.E.3d 483 (N.Y. 2022) to conclude "that creation of an implied private right of action would be inconsistent with the legislative scheme because 'multiple official enforcement mechanisms' exist to enforce violations of Section 191" is misplaced. *Zachary*, 2024 WL 554174, at *8 (quoting *Grant*, 2024 WL 172900, at *5). Specifically, *Zachary* explained that *Konkur*'s holding, that a private right of action could not be inferred, concerned an anti-kickback statute, a "wholly separate provision in the NYLL" which the *Konkur* court "distinguished . . . from 'the substantive provisions of Labor Law [A]rticle 6,' like Section 191, which 'regulates payment of wages by employers and creates reciprocal rights of employees.'" *Id.* (quoting *Konkur*, 185 N.E.3d at 487). Therefore, the *Zachary* court concluded that *Konkur* does not "overcome the sound reasoning of *Vega* that a private right to enforce Section 191 violations may be implied." *Id.* Indeed, even prior to *Grant*, several other district courts rejected *Konkur*'s application to Section 191. *See, e.g.*, *Gutierrez*, 2023 WL 7337184, at *4 (distinguishing *Konkur* and noting that in that case, "the Fourth Department found that the Legislature did not intend to create a private right of action for violations of Section 198-b, a different part of the statute. The court offered no opinion with respect to whether other provisions within [A]rticle 6 of NYLL afford private rights of action." (alterations adopted) (internal quotation marks and citations omitted)); *Davis v. Banana Republic LLC*, No. 21-CV-6160, 2023 WL 5969597, at *7 (E.D.N.Y. Sept. 14, 2023) ("Multiple courts within the Second Circuit have recognized that *Konkur* does not constitute 'persuasive evidence' that the New York Court of Appeals would reject *Vega*'s reasoning, as *Konkur* 'considered a different section' of New York Labor Law than *Vega*." (citations omitted)) (collecting cases);

*Ramos v. Apple Inc.*, No. 22-CV-2761, 2023 WL 5803739, at *2 (S.D.N.Y. Sept. 6, 2023) ("As recognized by several other courts in this District, *Konkur* does not 'constitute persuasive data that the Court of Appeals would reject the holding in *Vega*.'" (citation omitted)); *Rosario v. Icon Burger Acquisition LLC*, No. 21-CV-4313, 2022 WL 17553319, at *5 (E.D.N.Y. Dec. 9, 2022) ("[S]everal district courts within this Circuit have already analyzed this issue and all have concurred that *Konkur* does not affect the core holding of *Vega*.") (collecting cases).

This Court finds no reason to deviate from *Zachary*'s well-reasoned analysis and thus concludes that the Court of Appeals is likely to apply *Vega*'s reasoning over *Grant*'s in resolving this issue.

Moreover, Defendant's other arguments against *Vega*'s reasoning, (*see* Def.'s Mem. 4–7 (arguing that "[t]he [p]lain wording of Title 6 of the NYLL does not afford a private right of action for the untimely payment of wages"); *id.* at 7–11 (arguing that "[d]ecisions holding that an implied private right of action exists for alleged frequency of pay violations under NYLL § 191 are inconsistent with the plain language of Title 6 and established principles of statutory construction"); *id.* at 11–14 (arguing that "Title 6's structure and legislative history do not support the recognition of a private right of action for alleged frequency-of-pay violations"); *id.* at 14–16 (arguing that "[t]he plain language of the statute and the NYLL's structure contradict the notion that the Legislature intended to create a private right of action for alleged untimely wage claims asserted by manual worker")), are unavailing.  Numerous courts have already considered and rejected them.  *See, e.g.*, *Krawitz v. Five Below, Inc.*, No. 22-CV-2253, 2023 WL 6385711, at *2–3 (E.D.N.Y. Sept. 29, 2023) (rejecting defendant's arguments against *Vega*, including that "the plain language of Section 198 fails to confer an express private right of action for violations of Section 191, that wage claims are brought exclusively by the New York

Department of Labor, and that Section 191's legislative history reinforces this reading of the statute," and noting that "[d]efendant makes the same arguments that courts in this circuit have repeatedly rejected in recognizing a private right of action under *Vega*"); *Davis*, 2023 WL 5969597, at *8 (rejecting the same arguments that "*Vega* contradicts the plain language, legislative history, statutory scheme, and administrative enforcement mechanisms of New York Labor Law"); *Pozo v. BlueMercury, Inc.*, No. 22-CV-7382, 2023 WL 4980217, at *4 (S.D.N.Y. Aug. 3, 2023) ("None of the objections Defendant raises to *Vega's* holding," including, inter alia, that it rests on unsound statutory interpretation and is inconsistent with legislative history and enforcement schemes, "constitutes 'persuasive evidence' that the Court of Appeals would reject *Vega*."); *Rankine v. Levi Strauss & Co.*, — F. Supp. 3d — , 2023 WL 3582323, at *6 (S.D.N.Y. May 22, 2023) ("Defendant's other arguments, which seek to relitigate *Vega*," including, inter alia, arguments concerning *Vega*'s inconsistency with the legislative history of Sections 191 and 198(1-a) and the enforcement schemes for violations of the NYLL, "are unavailing").  As such, the Court finds no reason to relitigate the specific holding in *Vega*.

Therefore, this Court joins every other district court in the Second Circuit in adopting *Vega*'s approach and denies Defendant's Motion to Dismiss Plaintiffs' Section 191 claim.

### III.  Conclusion

For the foregoing reasons, Defendant's Motion is denied.  The Clerk of Court is respectfully requested to terminate the pending Motion.  (Dkt. No. 25.)  The Court will hold a telephonic status conference on March 8, 2024, at 2:30 PM.

SO ORDERED.

Dated:   February 27, 2024
          White Plains, New York

_____
          KENNETH M. KARAS
          United States District Judge

12